**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN WORTH DIVISION**

| | |
|---|---|
| JOHN COLIN SUTTLES, on behalf of himself and all others similarly situated,<br><br>                        Plaintiff,<br><br>        v.<br><br>SENTRY SURVEILLANCE, INC.<br><br>                        Defendant. | Case No. 16-cv-1174<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

JOHN COLIN SUTTLES ("Plaintiff"), individually and on behalf of all other persons similarly situated, brings this action against Defendant SENTRY SURVEILLANCE, INC. ("Defendant") to stop Defendant's practice of making unsolicited and illegal telemarketing calls to the telephones of consumers nationwide, and to obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## INTRODUCTION

1.      Defendant is a company that offers security products to businesses in 17 states in the U.S.  To promote its products and services, Defendant engages in reckless and aggressive telemarketing practices which outright ignore the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), Texas law, and the rights of the called parties.

2.      Defendant conducted (and continues to conduct) wide scale telemarketing campaigns and repeatedly made unsolicited calls to consumers' telephones without consent, in violation of the TCPA.  Defendant made one or more unauthorized calls to Plaintiff's cell phone

using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the purpose of marketing its products and services.  Congress enacted the TCPA to protect consumers from unsolicited telephone calls exactly like those alleged in this case. Plaintiff files the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited ATDS calling activities to consumers and an award of statutory damages to the members of the Class under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

3.      By making the telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of a putative Class of consumers (defined below) actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the monies paid to their carriers for the receipt of such telephone calls.

4.      Defendant's telephone calls also violate Chapter 302 of the Tex. Bus. & Com. Code - the Regulation of Telephone Solicitation statute in Texas ("Texas TCPA"), and, in turn, the Texas Deceptive Trade Practices Act (the "DTPA"). As with the Federal violations, Defendant did not have the requisite consent required by Texas law when it made calls to Plaintiff and members of the Proposed Class as defined below.  Accordingly, Plaintiff is entitled to recover statutory damages, actual damages, attorneys' fees, and costs of court for each and every such violation.

## PARTIES

5.      Plaintiff JOHN COLIN SUTTLES is a natural person and citizen of Austin, Texas.

6.      Defendant SENTRY SURVEILLANCE, INC. is a corporation organized under the laws of the State of Georgia.  Defendant maintains its principal office in Kennesaw, Georgia, and may be served with process through its registered agent, Steve H. Dimitrious, at 840 Shallowford Road,

Ste. 301, Kennesaw, Georgia 30144.

7.     Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

9.     The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.  Furthermore, Defendant has purposefully availed itself of the protections of Texas law, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.  For these same reasons, venue is proper in this District.

10.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of the putative class is a citizen of a state different from Defendant.  Furthermore, the Plaintiff Class consists of at least one hundred members.

## LEGAL BASIS FOR THE CLAIMS

### The TCPA

11.     Congress enacted the TCPA in 1991 to address certain practices thought to be an invasion of consumer privacy and a risk to public safety. The TCPA and the Federal Communications Commission's ("FCC") implemented rules prohibit: (1) making telemarketing calls using an artificial or prerecorded voice to residential telephones without prior express consent; and (2) making any non-emergency call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to a wireless telephone number without prior express consent.  If the call includes or introduces an advertisement, or constitutes telemarketing, consent must be in writing.[1]  Calls that include non-marketing messages require consent, but not written consent.  The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation, as well as injunctive relief.

12.     Since the TCPA's passage in 1991, the FCC has taken multiple actions implementing and interpreting the TCPA, and has issued numerous Declaratory Rulings clarifying specific aspects of the TCPA.  The most recent, FCC Omnibus Order of July 10, 2015, (the "Order") provided further protection to consumers by, among other things, clarifying that ATDS is broadly defined, confirming liability attaches to calls made to the wrong number or reassigned number, and clarifying consumers may revoke consent through reasonable methods.  *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

F.C.C.R. 7961, (July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order.  The Order defines an "autodialer" as equipment/software that has the future capacity to dial randomly or sequentially.  "In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities."  The Order clarifies the meaning of "capacity" and that "any call" made using a device with the capacity to serve as an ATDS requires consent under the TCPA, even if the caller is not "actually…using those functionalities to place calls" at the time.  *Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *3 (N.D. Cal. Sept. 11, 2015).

13.    The Order also states that calls placed to the wrong number or a reassigned number are made with knowledge of the error after the first call; and consumers may revoke consent through any reasonable method, including orally: "[w]e clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber.  If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such;" "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."

14.    Furthermore, the TCPA established the National Do-Not-Call List, and also mandates all businesses that place calls for marketing purposes maintain an "internal" do-not-call list ("IDNC").  See 47 C.F.R. § 64.1200(d).  The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]."  *Id*.  The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf

the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-Call Registry.  *Id.* at § 64.1200(d)(3), (6).  Any company, or someone on the company's behalf, who calls a member of the company IDNC is liable to that person under the TCPA.  The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

15.  Finally, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules."  In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

16.  Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

**The Texas TCPA & DTPA**

17.  In 1978, Chapter 302 of the TEX. BUS. & COM. CODE is the Regulation of Telephone Solicitation statute in Texas ("Texas TCPA").  A violation of the Texas TCPA is also a violation of the TEXAS DECEPTIVE TRADE PRACTICES ACT ("DTPA") by law:

> (a) A violation of this chapter is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17 (DTPA).

> (b) A public or private right or remedy prescribed by Subchapter E, Chapter 17 (DTPA), may be used to enforce this chapter.

TEX. BUS. & COM. CODE § 302.303; *see also* TEX. BUS. & COM. CODE § 17.50(h) (a plaintiff can maintain a DTPA suit based on the violation of other consumer-protection statutes that have been incorporated into the DTPA).  The Texas TCPA shall be liberally construed and applied to promote

6

its underlying purpose to protect persons against false, misleading, or deceptive practices in the telephone solicitation business. TEX. BUS. & COM. CODE § 302.003.

      19.    The Texas TCPA also provides much harsher civil penalties than the federal TCPA:

(a) A person who violates this chapter is subject to a civil penalty of not more than **$5,000 for each violation.**

■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■

(d) The party bringing the action also is entitled to recover **all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.**

TEX. BUS. & COM. CODE § 302.302 (emphasis added). The plaintiff can recover additional damages of **up to three times the amount of economic and mental anguish damages** for a DTPA claim. TEX. BUS. & COM. CODE § 17.50(b)(1) (emphasis added). Economic damages can be trebled if the defendant knowingly or intentionally violated the DTPA. *Id.*; *Bossier Chrysler-Dodge II, Inc. v. Riley*, 221 S.W.3d 749, 759 (Tex. App.–Waco 2007, pet denied). Mental-anguish damages can be trebled if the defendant acted intentionally. TEX. BUS. & COM. CODE § 17.50(b)(1).

## COMMON FACTUAL ALLEGATIONS

      18.    Defendant is a security company that operates in 17 states. Defendant uses aggressive high-pressure telemarketing campaigns as one of its methods for recruiting new customers. Unfortunately for consumers, Defendant, for its telemarketing scheme, utilized (and continues to utilize) a sophisticated telephone dialing system to call individuals *en masse* promoting their services. Defendant obtained these telephone numbers (*i.e.*, leads) by purchasing marketing lists containing consumers' telephone numbers.

      19.    In Defendant's overzealous attempt to market their services, it placed (and continues to place) phone calls to consumers who never provided consent to call and to consumers having no relationship with Defendant. Defendant knowingly made (and continues to make) these

telemarketing calls without the prior express written consent of the call recipients. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

20.     Not surprisingly, these practices have led to significant backlash from the public:[2]

- "This company called our business and would not even identify what service they offered. The telemarketer was very rude. She said she wanted "feedback". How could we provide feedback to a service we've never had, for a company we've never heard of? Very deceptive tactics to try to sell their service. I can only imagine how bad their customer service would be. Bad marketing"

- "I have asked repeatedly to be removed from their cold calling list, just got another 2 calls in the last 2 days.  They said that they had "a matter to discuss with us" as opposed to being honest and saying they are calling about potentially demonstrating a system to us which is what they are really trying to do.  I respect people that call me trying to sell me goods or services, sales is a tough business.  But without integrity you have no chance with me! Why do people think this will work these days?"

- "echoing [sic] the same as the other reviews here. extremely [sic] rude salespeople who cold call and argue with whomever is unfortunate enough to answer. in [sic] my case they called into a call center for technical support demanding to talk to our owner and was extremely rude to our technician who explained that person isn't reachable through tech support. they asked our

---

[2] *See, e.g.*, https://www.yelp.com/biz/sentry-surveillance-kennesaw-kennesaw.

technician if he was "stupid" because he could not tell them the name of the owner, when it is in fact our policy not disclose that information to phishers, since they should know the name of our owner if indeed they needed to reach that person. extremely poor way to handle business, i would never ever consider any product pushed by such an out-of-touch company. get [sic] real.

- "Ditto, deceptive tactics trying top sell there services.  Called and would not identify why they were calling and where they were from.  Telemarking AVOID"

**FACTS SPECIFIC TO PLAINTIFF JOHN COLIN SUTTLES**

21.     Beginning around June of 2016, Plaintiff began to receive calls from the number 713-987-3252, which is associated with Defendant.  At the time Plaintiff filed this lawsuit, he had received at least six calls from Defendant.

22.     Suttles received all calls described above on his cellular telephone assigned a number ending in 6767.

23.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Plaintiff's prior express written consent.

24.     Plaintiff was able to answer at least one of these calls and interact with the caller's live representative after being transferred by the device that dialed his number.

25.     When Plaintiff answered the calls, there was a long pause ("dead air") before Defendant's female representative engaged on the other end of the line.

26.     Plaintiff felt the calls were intrusive and disrupted his work day.  Therefore, he engaged the sales representative so he could illicit information for the purpose determining after

the call whether the calls originated from a legitimate company.  Plaintiff intended to contact someone other than a sales representative at Defendant's office to demand that the calls stop.

27.     Plaintiff informed the sales representative that he did not want cold calls and asked for a website so he could research the company on his own.  Defendant's representative provided www.sentrysurveillance.com, as well as a call-back number 972-388-1081.

28.     Following this call, Plaintiff continued to receive incoming calls from Defendant on his cell phone through July 12, 2016, even though he did not authorize any additional calls.

29.     At the time of the calls, Plaintiff did not have a business relationship with Defendant.

30.     Plaintiff felt the calls were an invasion of his privacy, disrupted his daily routine, and caused Plaintiff the sort of aggravation that typically accompanies unwanted sales pressure.

31.     The calls also occupied his phone line and interfered with his use and enjoyment of his cellular telephone, for which he paid valuable consideration.

32.     Based on the circumstances of the calls (e.g. dead air; multiple impersonal calls), Plaintiff believed Defendant called his cellular telephone using an ATDS that mechanically selected his number from a computer database.

33.     On information and belief, Defendant's ATDS called Plaintiff on every occasion.

34.     The telephone number Defendant called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

35.     Plaintiff is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 6767.

36.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

37.     Plaintiff did not provide Defendant with prior express written consent to place calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

38.     All calls Defendant made to Plaintiff violate 47 U.S.C. § 227(b)(1).

39.     Plaintiff has reason to believe Defendant has called, and continues to call, tens of thousands of wireless telephone customers in violation of the TCPA.

40.     Plaintiff's overriding interest is ensuring Defendant ceases all illegal telemarketing practices and compensates all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

41.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of himself and a class of similarly situated individuals, bring suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

42.     On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendant to cease all wireless telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

**A.     CLASS ALLEGATIONS**

43.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the following Classes defined as follows (the "Class"):

> **Autodialer Class:**  All individuals in the United States who received a call made by or on behalf of Defendant to the individual's cellular telephone through the use of an automatic telephone dialing system or any other device having the capacity to dial numbers without human intervention, from October 16, 2013 to the date that class notice is disseminated, where Defendant's records fail to indicate prior express written consent from the recipient to make such call.

11

44.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiff's counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

45.     This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

46.     Plaintiff reserves the right to expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

47.     Plaintiff and members of the Class were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through agents, illegally contacted Plaintiff and the Class' members *via* their cellular telephones by using an ATDS, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid; continuing to call Class members after they requested the calls cease or to be placed on Defendant's IDNC list; and invading the privacy of Plaintiff and the Class members.

**B.     NUMEROSITY**

48.     The exact sizes of the Class are unknown and not available to Plaintiff at this time, but it is clear individual joinder is impracticable.

49.     On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Class.  Members of the Class can be easily identified through Defendant's records.

## C.    COMMONALITY AND PREDOMINANCE

50.     There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

51.     Common questions for the Class include, but are not necessarily limited to the following:

a.     Whether Defendant's conduct violated the TCPA;

b.     Whether Defendant systematically made auto-dialed or pre-recorded calls to consumers who did not previously provide Defendant and/or its agents with prior express written consent to receive such phone calls after October 16, 2013;

c.     Whether members of the Class are entitled to treble damages based on the willfulness of Defendant' conduct;.

d.     Whether Defendant contacted citizens of the State of Texas for telemarketing purposes.

e.     Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

## D.    TYPICALITY

52.     Plaintiff's claims are typical of the claims of the other members of the Class.

53.     Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

## E.    ADEQUATE REPRESENTATION

54.     Plaintiff will fairly and adequately represent and protect the interests of the Class,

13

and has retained counsel competent and experienced in complex class actions.

55.     Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

**F.     POLICIES GENERALLY APPLICABLE TO THE CLASS**

56.     This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

57.     Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

**G.     SUPERIORITY**

58.     This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

59.     The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

60.     Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

61.     Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this

Complaint.

62.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

<u>FIRST CAUSE OF ACTION</u>
(VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT,
47 U.S.C. § 227, *ET SEQ.*)

63.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

64.     The foregoing acts and omission of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.* and 47 C.F.R. §64.1200, *et seq.*

65.     As a result of Defendant's violations of 47 U.S.C. § 227, *et seq.*, and 47 C.F.R. §64.1200, *et seq.,* Plaintiff and the Class Members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

66.     Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

<u>SECOND CAUSE OF ACTION</u>
(KNOWING AND/OR WILLFUL VIOLATION OF
THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)

67.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

68.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.* and 47 C.F.R. §64.1200, *et seq.*

69.     As a result of Defendant's violations of 47 U.S.C. § 227, *et seq.*, and 47 C.F.R. §64.1200, *et seq.* Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

70.     Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### THIRD CAUSE OF ACTION
### (VIOLATION OF THE TEXAS REGULATION OF TELEPHONE SOLICITATIONS Chapter 302 of the TEX. BUS. & COM. CODE)

71.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

72.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the Texas TCPA, including but not limited to each and every one of the provisions of Chapter 302 of the TEX. BUS. & COM. CODE.

73.     As a result of Defendant's violations of the Texas TCPA, Plaintiff is entitled to an award of  statutory damages in the amount of $5,000, for each and every violation, and actual damages including mental anguish, all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

### FOURTH CAUSE OF ACTION
### (VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT Chapter 17 of the TEX. BUS. & COM. CODE)

74.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

75.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the Texas TCPA, which automatically results in a violation of the DTPA.

76.     A violation of the Texas TCPA is also a violation of the Texas Deceptive Trade Practices Act ("DTPA") by law:

> "(a) A violation of this chapter is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17 (DTPA).

> (b) A public or private right or remedy prescribed by Subchapter E, Chapter 17 (DTPA), may be used to enforce this chapter."

Tex. Bus. & Com. Code § 302.303; *see also* Tex. Bus. & Com. Code § 17.50(h) (a plaintiff can maintain a DTPA suit based on the violation of other consumer-protection statutes that have been incorporated into the DTPA).

77.     As a result of Defendant's violations of the DTPA, Plaintiff is entitled to an award of  actual damages, treble damages for the Texas TCPA violations ($15,000 per violation), costs of court, and attorney's fees.

### JURY DEMAND

78.     Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues triable to a jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

1.   An order certifying this action as a class action and appointing Plaintiff and his counsel to represent the Class.

2.   For the first cause of action:

- An award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227, *et seq*.;

- Preliminary and permanent injunctive relief enjoining Defendant, its agents,

17

servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unlawful calls made with automated dialing systems to cellular phones without prior express consent;

- Attorneys' fees, costs and any and all other relief that the Court deems just and proper.

3. For the second cause of action:

- Plaintiff and Class members are entitled to and request $1,500.00 in statutory damages, for each and every violation , pursuant to 47 U.S.C. § 227, *et seq*.;

- Preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unlawful calls made with automated dialing systems to cellular phones without prior express consent, placing calls to the wrong number, and placing calls to members of Defendant's IDNC;

- Attorneys' fees, costs and any and all other relief that the Court deems just and proper.

4. For the third cause of action:

- Plaintiff and Class members are entitled to and request $5,000.00 in statutory damages, for each and every violation, pursuant to Tex. Bus. Com. Code 302;

- Actual damages;

- Preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, debt collection in Texas;

18

- Attorneys' fees, costs and any and all other relief that the Court deems just and proper.

5.  For the fourth cause of action:

- Actual damages;

- Treble damages for knowing or willful violations of Tex. Bus. Com. Code § 302;

- Preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, debt collection in Texas;

- Attorneys' fees, costs and any and all other relief that the Court deems just and proper.


Dated: October 26, 2016                          Respectfully Submitted,


                                                 */s/ Jarrett L. Ellzey*
                                                 W. Craft Hughes
                                                 Jarrett L. Ellzey
                                                 **HUGHES ELLZEY, LLP**
                                                 2700 Post Oak Blvd., Ste. 1120
                                                 Galleria Tower I
                                                 Houston, TX 77056
                                                 Phone: (713) 554-2377
                                                 Fax: (888) 995-3335
                                                 E-Mail: craft@hughesellzey.com
                                                 jarrett@hughesellzey.com